IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JESUS TREVINO                                                                                       PLAINTIFF

v.                                    Civil No. 09-5143

BENTON COUNTY, ARKANSAS;
INVESTIGATOR COREY COGGIN;
DEPUTY TRAVIS NEWELL; INVESTIGATOR
NATHAN ATCHISON; and INVESTIGATOR
SHEYLA FERNANDEZ                                                                          DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Jesus Trevino, also known as Adalid Montiel Figueroa, filed this civil rights action pursuant to the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Trevino is currently incarcerated in the Federal Correctional Institution in Post, Texas. At issue in this case is the constitutionality of a traffic stop, search, and subsequent arrest that occurred on July 3, 2007, in Benton County, Arkansas.

On January 6, 2012, Defendants filed a summary judgment motion (Doc. 94). On January 17th, a telephonic hearing was held to allow Trevino to respond to the summary judgment motion and for purposes of determining whether there are facts in dispute that warrant a jury trial. Trevino also filed a written response to the summary judgment motion (Doc. 99).

**1. Background**

On July 2, 2007, Investigator Sheyla Fernandez, by telephone, arranged to purchase methamphetamine from a Hispanic male known as Honduras. Doc. 24, Defendants' Exhibit (hereinafter Defts' Ex.) 2 at pg. 1; see also Doc. 88, Defs' Ex. 1. Investigators Atchison, Newell, and Coggin were assigned as Fernandez's cover team and to monitor an audio listening

device (ALD). Id. Fernandez met with Honduras and two other unknown Hispanic males. Id. Fernandez and Honduras went to her vehicle where she agreed to purchase an "8-ball" for $300. Id. Later that evening, Fernandez purchased what was represented to her to be an "8-ball" of methamphetamine from one of the two unidentified Hispanic males. Id. at pg. 2.

Fernandez field tested the substance and it had a negative result for methamphetamine. Id. at pg. 2. She called Honduras and he agreed to make it right the following day. Id.

On July 3rd, Honduras arranged to meet Fernandez at the McDonalds in Lowell, Arkansas. Id. pg. 3. Fernandez concealed an ALD on her body. Id. Honduras represented that he did not have the methamphetamine. Id. Fernandez stated she wanted her money or the drugs the following day. Id. Honduras agreed. Id.

Honduras, who was identified as Trevino, and another Hispanic male, later identified as Carlos Mejia, were in a green Geo Prism. Mejia was driving the vehicle. Coggin was stationed in the area in a unmarked truck. Doc. 96, Defts' Ex. 1 at ¶ 4. Atchison and Newell contacted Coggin and described the vehicle the two suspects were driving. Id. Coggin was informed probable cause existed to arrest both suspects for delivery of a counterfeit substance and conspiracy to deliver a controlled substance. Id.

Coggin followed the vehicle onto Interstate 540. Doc. 96, Defts' Ex. 1 at ¶ 4. According to Coggin, he noticed the vehicle did not use a turn signal when changing lanes. Id. Coggin pulled the vehicle over and learned that Mejia, the driver, did not have a driver's license or correct registration for the vehicle. Id. Mejia was issued a citation for failing to signal, not having a driver's license, and for false evidence of title or registration. Id. at Ex. 1(A); Doc. 88, Defts' Ex. 3 at pg. 64; Doc. 82, Defts' Ex.1 at pg. 53. Mejia was given a court date of August 20, 2007, at 9:00 a.m. for the traffic citations. Id. On August 20th, Mejia plead guilty to not

having a driver's license, having a fictitous tag or vehicle license, and failure to give a proper signal.  Doc. 88, Defts' Ex. 3 at pgs. 65-67.

Both of the vehicle's occupants were arrested and transported to the Benton County Detention Center (BCDC).  Doc. 96, Defts' Ex. 1 at ¶¶5-6.  The decision was made to have the vehicle towed and the contents were inventoried.  Doc. 96, Defts' Ex. 1 at ¶ 6; Doc. 88, Defts' Ex. 3 at pg. 61; Doc.82, Defts' Ex. 1 at pg. 54.

On July 5th, probable cause was found to exist for the continued detention of Trevino for the offenses of accomplice to deliver a counterfeit substance and conspiracy to deliver a counterfeit substance.  Doc. 24,Defts' Ex. 1 at pg. 6-7.  He was appointed a public defender and his next court date was scheduled for August 13, 2007.  Id.

On May 12, 2008, Trevino failed to appear for a court proceeding and a bench warrant was issued.  Doc. 24 Defts' Ex. 1 at pg. 9; see also Doc. 88, Defts' Ex. 3.  He was arrested on the failure to appear charge and booked back into the BCDC on May 15th.  Doc. 24, Defts' Ex. 1 at pg. 10.  He was also being held for the United States Marshal Service.  Id. at pg. 10.  On July 7th, the State's motion to nolle prosequi the state charges was granted.  Id. at pg. 13.  Trevino was released into the custody of another agency on July 24th.  Id. at pg. 10.

### 2. Applicable Standard

The hearing was held to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Johnson v. Bi–State Justice Center, 12 F.3d 133, 135 (8th Cir. 1993)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  When both sides present evidence, the procedure "resembles a summary judgment motion with live evidence."  Id.

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view all evidence and inferences in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

### 3. Discussion

### (A). The Stop

"The Fourth Amendment guarantees the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" United States v. Frasher, 632 F.3d 450, 453 (8th Cir. 2011)(quoting U.S. Const. amend IV). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment.]" Whren v. U.S., 517 U.S. 806, 809 (1996). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810.

"A traffic violation, however minor, provides probable cause sufficient to satisfy the constitutional reasonableness requirement. Once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." United States v. Frasher, 632 F.3d 450, 453 (8th Cir. 2011)(citations omitted). Likewise, "it is irrelevant that the officer would have ignored the violation but for his ulterior motive." Id.

AO72A
(Rev. 8/82)

In this case, Coggin maintains he observed the vehicle failing to signal a lane change. Arkansas Code Annotated § 27-51-403(b) requires a "signal of intention to change lanes or to turn right or left shall be given continuously during not less than the last one hundred feet (100') traveled by the vehicle before changing lanes or turning."

It is undisputed that Mejia was issued a citation for three traffic violations and plead guilty to each violation. Doc. 88, Defts' Ex. at pgs. 64-67. The fact that the stop may have been pretextual is not relevant. United States v. Stachowiak, 521 F.3d 852, 855 (8th Cir. 2008)("It is well established a minor traffic violation provides probable cause for a traffic stop, even if it is mere pretext for a narcotics search"). Coggin's "observation of a traffic violation gave him probable cause to stop the vehicle, and his subjective intent" is irrelevant. Frasher, 632 F.3d at 454.

Assuming, as Trevino argues, that there was no traffic violation, an assumption the record does not support, the stop was nevertheless valid. "A warrantless arrest in a public place is valid if the arresting officer has probable cause." United States v. Czeck, 105 F.3d 1235, 1238 (8th Cir. 1997). No "arrest warrant is required when police officers with probable cause to arrest a suspect do so while the suspect is riding in an automobile on a public street." Id. As explained below, the facts known to Coggin, and the other officers involved, provided probable cause to stop the vehicle for purposes of arresting Mejia and Trevino.

**(B). The Arrest**

"A warrantless arrest is reasonable under the Fourth Amendment where it is supported by probable cause. Probable cause exists when the facts and circumstances within an officer's knowledge are sufficient to lead a person of reasonable caution to believe that the suspect has

committed or is committing a crime." Bernini v. City of St. Paul, 665 F.3d 997, 1003 (8th Cir. 2012)(citation omitted).

In this case, there was an ongoing undercover investigation of Mejia and Trevino. Coggin had been notified by Atchison and Newell that probable cause existed to arrest both suspects on felony charges. "When multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting officer as long as there is some degree of communication." Frasher, 632 F.3d at 453. The information contained by the team of officers working on the case against Mejia and Trevino established probable cause to believe he was involved in drug offenses. See Doc. 88, Defts' Ex. 1.

Moreover, "an officer is entitled to qualified immunity if there is at least arguable probable cause. . . . Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" Borgman v. Kedley, 646 F.3d 518, 523 (8th Cir. 2011). Coggin is entitled to qualified immunity. He was working on the undercover investigation and had been advised that there was probable cause to arrest Trevino for the offenses of accomplice to deliver a counterfeit substance and conspiracy to deliver a counterfeit substance.

### (C). The Search

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions." Arizona v. Gant, 556 U.S. 332, 338 (2009)(quotation omitted). "Inventory searches are one of the well-defined exceptions to the

AO72A
(Rev. 8/82)

warrant requirement of the Fourth Amendment." Frasher, 632 F.3d at 454. Inventory searches serve "three distinct needs: the protection of the owner's property while it remains in police custody, the protection [of] the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger." South Dakota v. Opperman, 428 US. 364, 369 (1976)(internal citations omitted). "The central question in evaluating the propriety of an inventory search is whether, in the totality of the circumstances, the search was reasonable." United States v. Kennedy, 427 F.3d 1136, 1143 (8th Cir. 2005).

In this case, both the driver and occupant of the car were arrested. No other responsible person was present to take custody of the vehicle. The vehicle was towed and an inventory made of its contents. The search did not violate the Fourth Amendment. Furthermore, even assuming the inventory search was improper, Trevino as "a mere passenger" could not claim a legitimate expectation of privacy in the car and lack[s] standing to challenge the search of the car. " United States v. Barragan, 379 F.3d 524, 530 (8th Cir. 2004).

### D. Liability of Benton County

A governmental entity "cannot be held liable under § 1983 solely because it employs a tortfeasor. A [governmental entity] can be liable only if a policy or custom caused a plaintiff to be deprived of a federal right." L.L. Nelson Enterprises, Inc. v. County of St. Louis Missouri, 673 F.3d 799, 811 (8th Cir. 2012). There is no evidence Trevino was deprived of a federal right due to the existence of any policy of custom of Benton County.

AO72A
(Rev. 8/82)

### 4. Conclusion

For the reasons stated, I find that the evidence is so one-sided that Defendants must prevail as a matter of law. The motion for summary judgment (Doc. 94) should be granted and the case dismissed with prejudice.

**The parties have fourteen days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of May 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE